FILED by _____ _EG_ D.C.
ELECTRONIC

**Sep 1 2005**

CLARENCE  MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. · MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

LANCER PARTNERS L.P.,

        Plaintiff,

vs.

ALFRED A. TAUBMAN, TTEE A. TAUBMAN
RET REV. TRUST,

        Defendant.

_____/

Case No.: 05-60617-CIV-MARRA

## TAUBMAN'S MOTION TO DISMISS THE AMENDED COMPLAINT AND SUPPORTING MEMORANDUM OF LAW

Defendant, Alfred A. Taubman, TTEE A. Taubman Ret Rev. Trust ("Taubman"), by and through its undersigned counsel, moves to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b) and S.D. Fla. L.R. 7.1, and states as follows:

## I.    INTRODUCTION

1.      By the Amended Complaint, Lancer Partners, L.P. ("Plaintiff") seeks recovery against Taubman, one of Plaintiff's former investors, for transfers made by or on behalf of Plaintiff to Taubman that are alleged to be in excess of the amount of Taubman's investment.

2.      The Amended Complaint alleges that Taubman invested a total of $1,033,000.00 during 1996 and 1997 and then received redemptions exceeding the amount of its contributions by $2,055,152.00.  *See* Amended Complaint at ¶¶ 29 – 31 attached as Exhibit "A"; *see also* Exhibit A to the Amended Complaint.  Plaintiff seeks to recover from Taubman these so-called "Excess Redemptions."

3.      Paragraph 38 of the Amended Complaint specifically alleges that Taubman received payment of the Excess Redemptions ($2,055,152.00) on January 21, 2001 and June 1,

2001.  These alleged payments and the "other transfers by [Plaintiff] to the Defendant" are then

defined as the "Transfers" (hereinafter "Transfers").

4.    Plaintiff alleges that the Transfers are fraudulent within the meaning of the

Bankruptcy Code and applicable state law, and seeks to recover the value of the Transfers under

the Code and various state law theories.

## II.    ARGUMENT

### A.    Applicable Standard.

5.    A court should grant a motion to dismiss for failure to state a claim if it finds that

the plaintiff's complaint, factually accepted as true, evidences no set of facts entitling the plaintiff

relief.  *Executive 100, Inc. v. Martin County*, 922 F.2d 1536, 1539 (11th Cir. 1991).  In making

this determination, the court must construe the complaint liberally in the plaintiff's favor.  *Sherry*

*Frontenac, Inc. v. United States*, 868 F.2d 420, 421 (11th Cir. 1989).  Even when applying this

liberal standard, it is clear that each Count in the Amended Complaint does not state a claim

upon which relief can be granted and, accordingly, the Amended Complaint should be dismissed.

### B.    Counts I, II and III should be dismissed for failure to state a claim because Plaintiff cannot properly allege that an actual creditor existed that could have voided the Transfers. [1]

6.    Counts I, II and III each seek to avoid and recover the Transfers pursuant Florida

Statutes Chapter 726, which Plaintiff has invoked via 11 U.S.C. §544.[2]  Section 544 incorporates

the applicable non-bankruptcy law that would be available to an actual unsecured creditor of the

debtor, and authorizes a debtor to avoid a transfer of an interest of the debtor in property where

---

[1] Judge Federico A. Moreno on July 20, 2005, entered an order granting the motion to dismiss in *Lancer Partners, L.P. vs. Opus Portfolio, Ltd.*, United States District Court Southern District of Florida Case No. 05-60601. The *Opus Portfolio Ltd.* case was commenced against another limited partner in Lancer Partners, L.P., but it is otherwise identical to the case *sub judice*.  That is, plaintiff in the *Opus Portfolio Ltd.* case asserts the same causes of actions based on the same alleged conduct – only the defendant is different.  Dismissal was ordered in the *Opus Portfolio, Ltd.* case for, *inter alia*, those counts premised on 11 U.S.C. §544(b) on the same grounds urged here by Taubman.  *See* July 25, 2005 Order attached as Exhibit "B."

BILZIN SUMBERG BAENA PRICE & AXELROD LLP
200 SOUTH BISCAYNE BOULEVARD, SUITE 2500 • MIAMI, FLORIDA 33131-5340

that transfer is avoidable under such law by a creditor holding an unsecured claim. *In re Grubbs Constr. Co.*, 321 B.R. 346, 350 (Bankr. M.D. Fla. 2005).

7.      Under §544(b), a debtor succeeds to the rights of an allowed unsecured creditor in existence as of the petition date that could avoid the subject transfer under applicable state or local law. *In re Grubbs Constr. Co.*, 321 B.R. 346, 350. If no creditors could have voided the transfer, then the debtor is "powerless to act." *Id.* In effect, §544(b) provides for a debtor to act as a representative of existing creditors – no new rights are created that were not held by the creditors themselves. Rather, the existing rights of creditors are shifted to the debtor. *Id.*

8.      Thus, a nexus to Florida is the *sine qua non* of a claim under 11 U.S.C. §544(b) invoking Florida law. That is, Florida has no interest in applying its laws to extra-territorial conduct, and Florida simply cannot apply its laws in such a manner and be consistent with traditional notions of federalism and due process. *See* Exhibit B; *c.f.* 11 U.S.C. §544(b) (providing that a trustee may a void a transfer "voidable by a creditor under applicable law holding an unsecured claim"). Put another way, without a Florida nexus no creditor could have taken advantage of Chapter 726, Florida Statutes – no creditor would have existed within the meaning of 11 U.S.C. §544(b).

9.      None of the Transfers could have been set aside by any creditors of Plaintiff under Florida Statutes Chapter 726, because there are no allegations demonstrating any nexus between Florida and the alleged Transfers.[3] No creditors are alleged to have existed in Florida, and no

---

[3] Plaintiff admittedly claims that in ¶ 39 of the Amended Complaint that an actual creditor existed that could have avoided the transfers in question. However, this claim is belied by the remainder of the Amended Complaint, which establishes the lack of any nexus to this forum. *See, e.g.*, Amended Complaint at ¶¶ 5, 32. Under such circumstances, the Court need not accept the allegations in ¶ 39 as true. *See, e.g., Associated Builders, Inc. v. Alabama Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974) (noting that: "conclusory allegations and unwarranted deductions of fact are not admitted as true"); *see also Consolidated Jewlers, Inc. v. Standard Fin. Corp.*, 325 F.2d 31, 36 (6th Cir. 1963) (holding that "general averments of conclusions stated in the pleadings do not require the District Court to hear evidence, when the pleadings are at variance and inconsistent with the clear and unambiguous language of a contract").

BILZIN SUMBERG BAENA PRICE & AXELROD LLP
200 SOUTH BISCAYNE BOULEVARD, SUITE 2500 • MIAMI, FLORIDA 33131-5340

transfers are alleged to have been effectuated in Florida. Plaintiff was not domiciled in Florida and is not alleged to have had any operations in Florida. Taubman is not alleged to have transacted any business in Florida. Indeed, no investment by Taubman is alleged to have any relationship with Florida. The sole alleged relationship to Florida is that venue for this bankruptcy case was transferred in April 2004 from a Connecticut bankruptcy court to the Southern District of Florida because a receivership for entities not in bankruptcy wasending in this District at the time.

10.    In summary, there are no colorable allegations that (1) there were actual unsecured creditors which (2) existed at the time the Transfers were alleged to have occurred that (3) outside of bankruptcy could have avoided the Transfers under Florida Statutes Chapter 726. Absent those specific allegations, Plaintiff may not proceed under any of the three cited provisions of Chapter 726 and Counts I, II and III should be dismissed pursuant to Fed. R. Civ.P. Rule 12(b)(6).

C.    **Count IV should be dismissed because it is an equitable claim and Plaintiff has pled the entitlement to legal relief.**

11.    Count IV seeks recovery of the Transfers as unjust enrichment. However, a claim for unjust enrichment is an equitable claim and may not be brought when an adequate legal remedy is alleged. *In re Martin*, 278 B.R. 634, 644 (Bankr. S.D. Fla. 2002), *citing Nautica Int'l, Inc. v. Intermarine USA, L.P.*, 5 F.Supp.2d 1333 (S.D. Fla. 1998).

12.    In *Martin*, a trustee brought a complaint seeking to recover a particular transfer as constituting a fraudulent transfer and unjust enrichment. At summary judgment the defendant[4] asserted, *inter alia*, that a trustee may not bring an unjust enrichment action as well as a

---

[4] The decision of *In re Martin* identifies Plaintiff's counsel, Andrew D. Zaron, Esq., as counsel to the defendant which apparently prevailed at summary judgment on the arguments now asserted by Taubman. *See In re Martin*, 278 B.R. at 636.

BILZIN SUMBERG BAENA PRICE & AXELROD LLP
200 SOUTH BISCAYNE BOULEVARD, SUITE 2500 • MIAMI, FLORIDA 33131-5340

fraudulent transfer action because the fraudulent transfer action provides for an adequate remedy at law[5]. Bankruptcy Judge Hyman agreed:

> In the present case, the Trustee has set forth in several counts fraudulent transfer claims under both federal and state law...it appears that these claims, if successful, would provide the Trustee with an adequate legal remedy. Moreover, upon reviewing the Complaint, the trustee fails to allege its statutory remedies are inadequate...Accordingly, the Court finds that the Trustee cannot proceed under the equitable doctrine of unjust enrichment..."

*In re Martin*, 278 B.R. at 644-45. Thus, the court in *In re Martin* specifically concluded that a trustee may not bring an unjust enrichment action and a fraudulent transfer action because the fraudulent transfer action provides an adequate remedy at law. *Id.*[6]

13.     As in *In re Martin*, here Plaintiff has not alleged – and cannot allege – an inadequate legal remedy because the same relief is sought in Counts I – III and V.[7] Under such circumstances Count IV of the Amended Complaint should be dismissed.

**D.     Taubman cannot be liable for the wrongful distribution of partnership assets under Connecticut law and Count V of the Amended Complaint should therefore be dismissed.**

14.     Count V of the Complaint claims that the Transfers constitute an unlawful distribution of partnership assets and violate the terms of the Connecticut Uniform Limited Partnership Act, 34 C.G.S.A. 34-25a (2005). This provides that a partner may be liable upon return of its contribution:

> (a) If a partner has received the return of any part of his contribution without violation of the partnership agreement or this

---

[5] The *Martin* defendant also asserted the potential existence of a breach of contract claim, in addition to the fraudulent transfer claims.

[6] Judge Moreno held in his Order on July 20, 2005 that a count for unjust enrichment in Plaintiff's Complaint against a similar defendant should be dismissed because of the existence of an adequate legal remedy. *See* Exhibit B.

[7] The fact that Taubman has sought dismissal of Plaintiff's legal claims is of no moment. Unjust enrichment is not a viable claim even where the legal rights asserted by a plaintiff are inadequate or unworkable. *See United States Fid. and Guar. Co. v. Metro Prop. and Liab. Ins. Co.*, 521 A.2d 1048, 1050 (Conn. App. Ct. 1986); *see also* 66 Am. Jur. 2d Restitution and Implied Contracts § 30 (2005).

BILZIN SUMBERG BAENA PRICE & AXELROD LLP
200 SOUTH BISCAYNE BOULEVARD, SUITE 2500 • MIAMI, FLORIDA 33131-5340

chapter, he is liable to the limited partnership for a period of one year thereafter for the amount of the returned contribution, without interest, but only to the extent necessary to discharge the limited partnership's liabilities to creditors who extended credit to the limited partnership during the period the contribution was held by the partnership.

(b) If a partner has received the return of any part of his contribution in violation of the partnership agreement or this chapter, he is liable to the limited partnership for a period of six years thereafter for the amount of the contribution, without interest, wrongfully returned.

34 C.G.S.A. 34-25a.

15.    In summary, under the Connecticut Uniform Limited Partnership Act ("CULPA") Taubman could theoretically be liable for a wrongful distribution of partnership assets for one year in the absence of a violation of the applicable partnership agreement, or for six years where a violation of the partnership agreement had occurred. *See* 34 C.G.S.A. 34-25a. The "Transfers" are alleged to have occurred on July 2, 2002 and this action was not instituted until April 18, 2005. These facts preclude any cause of action under CULPA in the absence of a violation of the applicable partnership agreement. Thus, Plaintiff must plead and prove a violation of the applicable partnership agreement to state a claim under CULPA.

16.    The original Complaint did not allege how the Transfers to Taubman violated the applicable partnership agreement – or even that such a violation had occurred – and did not allege that the Transfers were made within one year prior to the filing of this proceeding. The Amended Complaint attempts to cure this deficiency by concluding, without supporting facts, that the "Transfers were made in violation of [Plaintiff's] Limited Partnership Agreement." Amended Complaint at ¶ 71.

17.    The problem with this allegation is that it fails to meet the most basic pleading requirement – *i.e.*, that Plaintiff provide a "short plain statement of the claim showing that the

pleader is entitled to relief." *See* Fed. R. Civ. P. 8. That is, Plaintiff asserts a "violation" of the partnership agreement but it does not state what provision of the agreement was violated or how the Transfers allegedly violated the agreement. This is more than an academic point because *the underlying facts* – and indeed certain allegations in the Amended Complaint – establish that the Transfers were made in accordance with the applicable partnership agreement and consistent with the parties' course of dealing. *See, e.g.*, Amended Complaint at ¶ 28 (explaining that Plaintiff's practice of honoring redemption requests).

18.    A number of cases have found that conclusory allegations of the type made by Plaintiff are insufficient to state a claim. *See Pritchett v. General Motors Corp.*, 650 F.Supp. 758, 763 (D. Md. 1986) (holding that a complaint failed to state a cause of action for breach of contract where it failed to allege what the contractual obligations were and how they were breached); *see also Rawson v. Sears Roebuck & Co.*, 530 F.Supp. 776 (D. Colo. 1982) (noting that mere allegations that a defendant breached a contract did not give fair notice within the meaning of Rule 8 and therefore did not state a claim). Where Plaintiff has not adequately alleged a violation of the applicable partnership agreement, it has failed to alleged all necessary elements of a cause of action pursuant to 34 C.G.S.A. 34-25a. In light of the foregoing Court VII of the Amended Complaint should be dismissed.

## III.    CONCLUSION

19.    For the foregoing reasons, the Amended Complaint fail to state causes of action against Taubman.

Bilzin Sumberg Baena Price & Axelrod llp
200 SOUTH BISCAYNE BOULEVARD, SUITE 2500 • MIAMI, FLORIDA 33131-5340

WHEREFORE, Defendant, Alfred A. Taubman, TTEE A. Taubman Ret Rev. Trust requests that this Court enter an Order dismissing the Amended Complaint, and granting such further relief as this Court deems just and proper.

Dated this 1st day of September, 2005.

Respectfully submitted,

**BILZIN SUMBERG BAENA PRICE & AXELROD LLP**
Counsel for Taubman
2500 Wachovia Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131-2336
Telephone: (305) 374-7580
Facsimile: (305) 374-7593

By: _____
Mindy A. Mora, Esq.
Florida Bar No. 678910
Jason Z. Jones, Esq.
Florida Bar No. 186554
Michael C. Foster, Esq.
Florida Bar No. 0042765

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing was sent via facsimile and regular U.S. mail to Jeffrey P. Bast, Esq. and Andrew D. Zaron, Esq., Hunton & Williams, 1111 Brickell Ave., Suite 2500, Miami, Florida 33131, this 1st day of September, 2005.

_____
Michael C. Foster

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 05-60617-CIV-MARRA


LANCER PARTNERS, L.P.,

      Plaintiff,

vs.

ALFRED A. TAUBMAN, TTEE
A. TAUBMAN RET REV. TRUST,

      Defendant.

_____/

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the Amended Complaint was served regular U.S. Mail to Alfred A. Taubman, TTEE A. Taubman Ret. Rev. Trust, 200 East Long Lake Road, Suite 300, Bloomfield Hill, MI  48303-0200 and J. Jones, Esquire, Bilzin Sumberg, et. al., 200 South Biscayne Boulevard, 23rd Floor, Miami, FL  33131, this /5th day of August, 2005.

        **HUNTON & WILLIAMS LLP**
        *Attorneys for Plaintiff*
        1111 Brickell Avenue, Suite 2500
        Miami, Florida 33131
        Telephone: (305) 810-2500
        Telecopier: (305) 810-2460


        By:_____
        Jeffrey P. Bast (FBN 996343)
        Andrew D. Zaron (FBN 965790

FILED by _____ **MC** _ D.C.
ELECTRONIC

**Aug 9 2005**

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 05-60617-CIV-MARRA

LANCER PARTNERS L.P.,

      Plaintiff,

vs.

ALFRED A. TAUBMAN, TTEE A. TAUBMAN RET REV. TRUST,

      Defendant.

_____/

### AMENDED COMPLAINT

    Plaintiff, Lancer Partners, L.P. ("Partners"), through undersigned counsel, hereby sues Defendant, ALFRED A. TAUBMAN, TTEE A. TAUBMAN RET REV. TRUST (the "Defendant"), and alleges as follows:

### JURISDICTION AND VENUE

    1.    This Court has subject matter jurisdiction over this Amended Complaint pursuant to 28 U.S.C. §§ 1334(b).

    2.    This Court has personal jurisdiction over the Defendant pursuant to Federal Rule of Bankruptcy Rule 7004 and the Florida Statutes.

    3.    This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (H), and (O).

    4.    Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

### BACKGROUND FACTS

    5.    In 1993, Michael Lauer ("Lauer") formed a New York limited partnership which he eventually named Lancer Partners, L.P. under the laws of the State of New York. In

November, 1997, Lauer formed Partners as a limited partnership under the laws of the State of Connecticut and he merged the two partnerships.

6.      Partners was an investment fund in which limited partners contributed money to be invested in a portfolio of securities.

7.      Lancer Management Group II, LLC ("Lancer II") served as Partners' general partner and investment manager.

8.      Lauer was the founder and principal owner of Lancer II.

9.      Lauer served as Lancer II's manager and thus as the *de facto* investment manager for Partners.

10.      Lancer II's advisory fee for managing Partners was approximately 1% per year, and was calculated by multiplying Partners' NAV at the beginning of each fiscal quarter by 0.25%.

11.      Lancer II also received an "incentive fee" equal to 20% of the net profits of Partners, as calculated on the last day of Partners' fiscal year.

12.      This fee structure provided Lauer with both the incentive and the means to artificially inflate the value of Partners' holdings. A higher net asset value would result in higher fees; and the determination of the net asset value used to determine those fees rested with Lauer alone.

13.      Lauer caused Partners to pursue a risky investment strategy focusing almost exclusively on small and micro-cap stocks with poor fundamentals.

14.      These "fallen angels" included Fidelity First Financial Corporation, Biometrics Security Technology, Inc., SMX Corp., XtraCard Corp. and Total Film Group, Inc. (collectively the "Target Companies").

2

15.    All of these companies were traded on the "pink sheets" - the small, relatively illiquid market for micro-capital stocks.

16.    The Target Companies had virtually no earnings.    None of them made any material earnings from operations.

17.    Only one of the Target Companies realized a profit and that was a result of cancellation of debt, not from operations.

18.    Lauer manipulated the value of the Target Companies in order to inflate the net asset values of Partners, attract more investors, induce remaining investors not to redeem their shares, and generate additional management fees for Lancer II and, in turn, himself.

19.    Lauer inflated the stated net asset value of Partners' holdings in the Target Companies in at least two ways.

20.    First, Lauer made manipulative trades in these Target Companies at the end of trading sessions late in each month - a practice known as "marking the close."

21.    Lauer placed orders for small numbers of shares in the thinly traded Target Companies at prices much higher than offered by anyone else in the market near the end of the trading days at the end of the period utilized to determine the net asset value of Partner's holdings for purposes of calculating fees.

22.    Often this would be the only retail transaction in shares of the Target Companies during a single day.

23.    Lauer used this "last trade price" as the per-share value of the Target Companies' shares and projected that value onto all of the shares in each Target Company held by Partners, thus inflating the stated net asset value of Partners.

24.    These inflated net asset values for Partners in turn inflated the fees payable to

3

Lauer and, convinced new investors to deposit new money into Partners and convinced current investors to maintain their investments in Partners.

25.    The second method used by Lauer to inflate the net asset value of Partners' holdings was bogus accounting valuation.

26.    The valuations commissioned and employed by Lauer failed to satisfy applicable standards in the valuation industry.  These bogus evaluations relied upon unreliable market prices for thinly traded securities, unjustified prices of private transactions, and baseless and unrealistic projections and hypotheticals.

27.    At all times relevant to this Amended Complaint, the actual net asset value of Partners' holdings, without taking into account the influence of the manipulative trading and valuation practices, never exceeded the amount of principal deposited by investors in Partners. Thus, Partners lacked any excess profits with which to make distributions and redemptions to investors.

28.    Nevertheless, Partners continued to honor redemption requests submitted by investors seeking to cash out the "profits" apparent from the artificially inflated net asset value of Partners' holdings.

29.    The Defendant was an investor who made one or more contributions to Partners in the amounts and on or about the dates specified on the attached **Exhibit "A."**

30.    The Defendant received from or on behalf of Partners the redemptions identified on the attached Exhibit "A" on or about the dates and in the amounts set forth in Exhibit "A."

31.    Thus, as reflected on Exhibit "A," the Defendant received from or on behalf of Partners total redemptions which exceeded the Defendant's total contributions by **$2,055,152.00** (the "Excess Redemptions").

4

32.    On April 16, 2003 (the "Petition Date"), Partners commenced a Chapter 11 bankruptcy case (the "Bankruptcy Case") by filing a voluntary petition for relief under Chapter 11 of Title 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Connecticut (the "Connecticut Bankruptcy Court").

33.    On January 9, 2004, Partners filed an Agreed Motion to Transfer Venue of the Bankruptcy Case to this Court (the "Motion to Transfer Venue").

34.    On February 10, 2004, the Connecticut Bankruptcy Court entered an Order granting the Motion to Transfer Venue (the "Transfer Order").

35.    Paragraph 2 of the Transfer Order provides that the Bankruptcy Case "is hereby transferred to the United States District Court for the Southern District of Florida to be administered by the District Court as a bankruptcy case under Title 11 and pursuant to 28 U.S.C. § 1334(a) through (c)."

36.    Upon information and belief, some of the funds transferred to the Defendant may have been dissipated.

37.    Upon information and belief, as of the time of the filing of this action, additional property transferred to the Defendant may still be in his/her/its possession or control.

38.    Accordingly, Partners hereby sues to recover the following Excess Redemptions received by the Defendant within the four-year period preceding the Petition Date:

| Date | Amount |
|------|--------|
| 01/21/2001 | $1,903,767.00 |
| 06/01/2001 | 151,385.00 |
| TOTAL: | $2,055,152.00 |

and all other transfers by Partners to the Defendant (collectively the "Transfers").

39.    As of the date of the Transfers, the Petition Date and the date of the Complaint, a creditor existed that could avoid the Transfers under applicable law.

5

40.    Partners remains a debtor-in-possession under § 1101 of the Bankruptcy Code. No trustee or examiner has been appointed in the Bankruptcy Case.

## COUNT I
## ACTUAL FRAUDULENT TRANSFER
### 11 U.S.C. § 544(b), Fla. Stat. §§ 726.105(1)(a)
### and 726.108 and other applicable law[1]

41.    The Receiver incorporates by reference those allegations set forth in Paragraphs 1 through 40 above.

42.    Partners made the Transfers to or for the benefit of the Defendant within four years prior to the Petition Date.

43.    Lauer caused Partners to make the Transfers to the Defendant with the actual intent to hinder, delay and defraud the creditors of Partners.

44.    Partners did not receive reasonably equivalent value in exchange for the Transfers made to the Defendant.

**WHEREFORE,** Partners demands judgment against the Defendant, in the amount of the Transfers, together with prejudgment interest from the date of the Transfers, costs, all the relief set forth in Fla. Stat. § 726.108 and other applicable law, and any further relief that this Court deems just, fair, and equitable.

---

[1] Partners assumes Florida's enactment of the Uniform Fraudulent Transfer Act governs this Amended Complaint, however, the law of other states may apply.

6

CASE NO.: 60617-CIV-MARRA

## COUNT II
## CONSTRUCTIVE FRAUDULENT TRANSFER
### 11 U.S.C. § 544(b), Fla. Stat. §§ 726.105(1)(b)
### and 726.108 and other applicable law

45.    The Receiver incorporates by reference those allegations set forth in Paragraphs 1 through 40 above.

46.    Partners made the Transfers to or for the benefit of the Defendant within four years prior to the Petition Date.

47.    Partners made the Transfers to or for the benefit of the Defendant without receiving reasonably equivalent value in exchange for such Transfers.

48.    Partners made the Transfers to or for the benefit of the Defendant for less than fair consideration.

49.    Partners was insolvent at the time the Transfers were made.

50.    The net assets of Partners were unreasonably small in relation to the Transfers.

51.    At the time the Transfers were made to or for the benefit of the Defendant, Lauer knew that Partners was insolvent, and that Partners would not be able to satisfy all of its liabilities as they came due.

52.    At the time the Transfers were made to or for the benefit of the Defendant, Partners was engaged in, or was about to engage in, a business or a transaction for which the remaining assets of Partners were unreasonably small in relation to the business or transaction.

53.    At the time the Transfers were made to or for the benefit of the Defendant, Lauer knowingly caused Partners to incur, or reasonably should have known that it would incur, debts beyond its ability to pay as they came due.

7

WHEREFORE, Partners demands judgment against the Defendant, in the amount of the Transfers, together with prejudgment interest from the date of the Transfers, costs, all the relief set forth in Fla. Stat. § 726.108 and other applicable law, and any further relief that this Court deems just, fair, and equitable.

## COUNT III
### CONSTRUCTIVE FRAUDULENT TRANSFER
**11 U.S.C. § 544(b), Fla. Stat. §§ 726.106(1)
and 726.108 and other applicable law**

54.    The Receiver incorporates by reference those allegations set forth in Paragraphs 1 through 40 above.

55.    Partners made the Transfers to or for the benefit of the Defendant within four years prior to the Petition Date.

56.    Partners made the Transfers to or for the benefit of the Defendant without receiving reasonably equivalent value in exchange for such Transfers.

57.    Partners was insolvent at the time the Transfers were made, or became insolvent as a result of the Transfers.

WHEREFORE, Partners demands judgment against the Defendant, in the amount of the Transfers, together with prejudgment interest from the date of the Transfers, costs, all the relief set forth in Fla. Stat. § 726.108 and other applicable law, and any further relief that this Court deems just, fair, and equitable.

8

## COUNT IV
## UNJUST ENRICHMENT

58.     The Receiver incorporates by reference those allegations set forth in Paragraphs 1 through 40 above.

59.     The Defendant has been unjustly enriched at the expense of Partners, by receiving the Transfers.

60.     It would be inequitable to permit the Defendant to retain the benefit of the Transfers because the Transfers consisted of other investors' misappropriated contributions to Partners.

61.     Additionally, it would be inequitable to permit the Defendant to retain the benefit of the Transfers because Partners did not receive reasonably equivalent value in exchange for the Transfers.

62.     The Defendant was not entitled to the Transfers because the Transfers were obtained from the Transferor through Lauer's misconduct.

63.     It would be inequitable to permit the Defendant to retain the benefit of the Transfers at the expense of Partners and other investors in and creditors of Partners.

64.     Partners does not have an adequate remedy at law and is therefore entitled to relief under the equitable doctrine of unjust enrichment[2].

**WHEREFORE,** Partners demands judgment against the Defendant, in the amount of the Transfers, together with prejudgment interest from the date of the Transfers, costs, and any further relief that this Court deems just, fair, and equitable.

------

[2] Partners pleads this equitable claim in the alternative to its legal claims.

9

## COUNT V
## RETURN OF WRONGFUL DISTRIBUTION
## OF PARTNERSHIP ASSETS
### (C.G.S.A. § 34-25a)

65.　The Receiver incorporates by reference those allegations set forth in Paragraphs 1 through 40 above.

66.　The Defendant was a limited partner in Partners.

67.　Partners is a partnership formed under the Connecticut Uniform Limited Partnership Act, Title 34 of the C.G.S.A.

68.　Partners made the Transfers to or for the benefit of the Defendant within six years prior to the Petition Date.

69.　The Transfers made by Partners to the Defendant constitute a return of a part of the Defendant's contribution to Partners.

70.　After giving affect to the distributions made to the Defendant and other limited partners, including the Transfers, the liabilities of Partners exceeded the fair market value of Partners' assets.

71.　The Transfers were made in violation of Partners' Limited Partnership Agreement.

72.　Accordingly, neither Lancer II nor Lauer was authorized to pay or cause Partners to pay distributions to the Defendant in the form of the Transfers.

73.　Lancer II and/or Lauer were acting adversely to Partners' interests when it caused Partners to make distributions to the Defendant in the form of the Transfers.

74.　Partners hereby seeks the return of the wrongful distributions made to the Defendant in the form of the Transfers pursuant to C.G.S.A. § 34-25a.

10

CASE NO.: 60617-CIV-MARRA

WHEREFORE, Partners demands judgment against the Defendant, in the amount of the Transfers, together with prejudgment interest from the date of the Transfers, costs, and any further relief that this Court deems just, fair, and equitable.

Dated: August __8__, 2005

**HUNTON & WILLIAMS LLP**
*Attorneys for the Debtor*
1111 Brickell Avenue
Suite 2500
Miami, Florida 33131
Telephone: (305) 810-2500
Telecopier: (305) 810-2460

By: _____
    Jeffrey P. Bast (FBN 996343)
    Andrew D. Zaron (FBN 965790)

## Exhibit A

| Partner Name / Account | Payment Dates / Year End | Subscriptions (Dr) | Redemptions (Dr) (Cr) | Net Invested Capital | Redemption in Excess of Subscriptions (Over) Under |
|---|---|---|---|---|---|
| Taubman, Alfred A. TTEE A. Taubman Ret Rev. Trust | 1996 | 1,000,000 | | 1,000,000 | |
| Taubman, Alfred A. TTEE A. Taubman Ret Rev. Trust | 1997 | 33,000 | | 1,033,000 | |
| Taubman, Alfred A. TTEE A. Taubman Ret Rev. Trust | 1998 | - | - | 1,033,000 | |
| Taubman, Alfred A. TTEE A. Taubman Ret Rev. Trust | 1999 | - | - | 1,033,000 | |
| Taubman, Alfred A. TTEE A. Taubman Ret Rev. Trust | 2000 | - | - | 1,033,000 | |
| Taubman, Alfred A. TTEE A. Taubman Ret Rev. Trust | 01/23/01 | | (2,936,757) | (1,903,767) | |
| Taubman, Alfred A. TTEE A. Taubman Ret Rev. Trust | 06/01/01 | | (151,335) | (2,055,152) | |
| **Taubman, Alfred A. TTEE A. Taubman Ret Rev. Trust Total** | | 1,033,000 | (3,088,152) | (2,055,152) | (2,055,152) |

# EXHIBIT B

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

**Case Number:  05-60601-CIV-MORENO**

LANCER PARTNERS L.P.,,

      Plaintiff,

vs.

OPUS PORTFOLIO, LTD.,,

      Defendant.

_____/



### <u>ORDER GRANTING MOTION TO DISMISS COUNTS I THROUGH VI</u>

THIS CAUSE came before the Court upon the Defendant's Motion to Dismiss Counts I

Through IV of the Complaint **(D.E. No. 7)**, filed on **June 6, 2005**.

Counts I and III of the Complaint are DISMISSED with regards to the first transfer of

$1,708,947 because the transfer was not made within two years of the bankruptcy petition as required

by 11 U.S.C. § 548(a)(1)(A).  Counts II, IV, and V of the Complaint are DISMISSED due to the fact

that the creditors of the Debtor would have had no standing to bring such an action in Florida as

required by 11 U.S.C. § 544 (b).  Count VI of the Complaint for unjust enrichment is DISMISSED

because there remains a claim, Count VII, upon which the Plaintiff can gain relief as a n adequate

legal remedy.



THE COURT has considered the motion and the pertinent portions of the record, and being otherwise fully advised in the premises, it is

**ADJUDGED** that the motion is GRANTED.

DONE AND ORDERED in Chambers at Miami, Florida, this 22 day of July, 2005.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies provided to:

Jeffrey P. Bast, Esq.
Andrew D. Zaron, Esq.

Michael S. Budwick, Esq.